Good morning, Your Honors. It pleases the Court, Peter Williamson appearing on behalf of the Plaintiff and Appellant. The law in the Ninth Circuit has been clearly established since at least 1989 that unnecessary handcuffing and or violent and aggressive and abusive handcuffing can amount to excessive force in violation of the Fourth Amendment. In Hansen v. Black, this Court held that the application of handcuffs in an abusive manner resulting in physical injury amounted to excessive force. Can I ask you a question, just since we don't have a lot of time, that other than the injury to your client's rotator cuffs, what if any other evidence suggests that the officer used excessive force? The manner in which they handcuffed her by simply forcing her arms behind her back and upwards towards her head. What evidence is there that that was either bad police practice or excessive? In other words, were we supposed to take judicial notice of that? We certainly know she was injured, but do we know, is there any other evidence that excessive force was used? Well, the question actually is whether she needed to be handcuffed at all in this case. So let's get back to that. Let's assume that they came in in the same situation. Well, we know that that's the way they handcuff people. They lift their back arms up, you know, to kind of wake them up. But let's assume that they came in executing the search warrant and politely said to your client, we need to handcuff you until we secure the place. Would that violate the Fourth Amendment? Well, it wouldn't necessarily violate the Fourth Amendment. No, it's really the amount of force that was used that you're complaining about. It's not the handcuffing itself, but the amount of force. Well, both actually. Well, then what? Because in the handcuffing situation, there would need to be some exceptional circumstances that would require her to be handcuffed. Really? You're executing a search warrant in a place where you think there's a dangerous liquid. You come to the door and the first person is there, but you're really looking for the second person. And you're really looking for the liquid. Can't you, without excessive force, restrain the first person you come upon until you get to the second one? And that's really what they did here. They released her as soon as they found her son. That wouldn't violate the Fourth Amendment, would it? There is a categorical right to detain someone, but you must look at the facts and circumstances of this case. This case is somewhat unique in the sense that prior to the day of the execution of the search warrant, the officers actually came to the home. They actually spoke to Mrs. NJN. They observed her to be a small person. They observed her to be an older woman. When they opened the door, they asked her to back up. She did. They asked her to raise her hand. She did. She was obviously unarmed. She had nothing in her hands. She was wearing pajama bottoms and a t-shirt. And we've read the record and your good brief, but I'm still trying to figure out, I'm trying to separate the two. So I still think you need to answer my first question. What if they had not used excessive force? What if they had just put handcuffs on her? Do you have a 1983 case or not? I believe, based on the totality of the facts and circumstances in this case, yes, there would have been a violation. But even assuming arguendo that you are right, that that is not a Fourth Amendment violation, certainly the manner in which this woman was handcuffed was abusive, it was violent, and under Ninth Circuit precedent, that would be an excessive force case under the Fourth Amendment. Well, but in Hanson, I think we have a case in which the handcuffing is probably not justified at all. Do you agree? Yes. And that's why I'm trying to figure out, once you get to a circumstance where the police are entitled to put some restraint on someone, now we're talking about the manner in which they did it, and we get into these immunity questions. And that's why Hanson strikes me as a different case. There was just no reason at all to handcuff somebody who was in a driveway, as I recall. Right. But in Hanson, the decision didn't hinge on the mere fact that she was handcuffed. It hinged on the manner in which she was handcuffed, and that's the same situation here. So let's go back to Judge Callahan's question. You've got the injuries, and you've got your client's testimony that the police officer lifted up her arms behind her. Is that the evidence from which we're supposed to find excessive force? Well, it's evidence to sufficiently raise a tribal issue of fact that the jury should decide whether that was excessive force or not. So what case? We're stuck with the Supreme Court's strange immunity analysis, which tells us we need to find some case out there that would have alerted this officer that this particular conduct violated the Fourth Amendment.  Well, it's Hanson, but it's also an opinion that Judge Pragerson authored in 1993 in Palmer v. Sanderson, in which he stated in the court's opinion that no reasonable officer could believe that the abusive application of handcuffs was constitutional. That's from 1993. So those cases, certainly Hanson, and I believe Meredith as well. Well, was there anything unusual about her handcuffing other than the fact that essentially if, I mean, that a thousand people could be handcuffed that way and none would have roped, you know, I mean, she was older, you know, all of those things. But would a reasonable officer know that that was excessive force? Yes. Under the facts of this case where a woman was completely compliant, she posed no threat to the officers, she was unarmed, she was dressed in pajama bottoms, she was facing at least three weapons in her face. But mothers can be, you know, I'm an older woman, small, you know, but when it comes to their children and, you know, situations in their house, you know, there are a lot of officers that are dead because they trusted someone while they were trying to secure a residence. So, you know, I'm just wondering in terms of it, you know, was there anything about the handcuffing, like say you throw someone down on the floor or you, I mean, or was it just a standard handcuffing, but your client doesn't have good shoulders and that happened? Judge Callahan, this was not a typical handcuffing. A typical handcuffing would be where an arm is placed squarely at the bottom of your back and you were handcuffed. And they handcuff you and they don't lift your arms up. She testified that the arms were lifted up this way, rotating towards her head. No reasonable officer would believe that that was an appropriate use of handcuffing technique under the facts and circumstances of this case. How long was she handcuffed before, because apparently she got frightened and she urinated and then they immediately, fairly quickly, unhandcuffed her so that she could clean herself up and... Well, that's disputed. The defense says... Well, what are the, if it's disputed, you get the inference in your favor. What, how long, what's the inference you get in terms of how long? Mrs. Injan testified that it was a very long time. Her best estimate was approximately 30 minutes. But, again, in the rush of this situation, it could have been less. But I don't think that's really the point. She doesn't dispute that the officers saw her urinate on herself and they took her to a bathroom and allowed her to change her clothes. But what is the evidence regarding whether she told them her shoulders hurt? She did not. She did not. So is that an undisputed fact? That's an undisputed fact. But, Your Honor, that is an important issue in a tight handcuffing case where the fact that the handcuffing is tight and the fact that the person complains about it becomes the constitutional violation when the officer does nothing to alleviate the tight handcuffs. But in this case, the injury had already occurred. It would have made no... It's irrelevant at that point that she would have complained about it. It would not have changed the situation. What happened in this case to your state law negligence claim? We just abandoned that part of the case, instead deciding to focus on what we believed was the stronger part of the case, which was excessive force. I couldn't tell. I knew it was dismissed, but I didn't know how that occurred. Right. Do you want to save some time? Sure, Your Honor. Thank you very much. Good morning, Your Honors. Good morning. May it please the Court. My name is Philip Kahn. I'm here on behalf of the appellees, City of Laguna Beach, and Sergeant Robert Whitehouse. This is the city of... Let's see, what's the city here? Laguna Beach, huh? Yes, Your Honor. Is it Laguna Beach? Laguna Beach, yes, sir. Yeah. Do you agree that the right against excessive force when being detained or arrested is clearly established? I'm sorry, Your Honor. Can you repeat the question? Do you agree that the right against excessive force when being detained or arrested is clearly established? I think the right generally is established, as this Court has recognized, if it's gratuitously violent or aggressive, a reasonable police officer should know and understand that that is not permitted. So where's the limit in this case? Let's assume that he lifted her off the ground to put the handcuffs on. Does that get him to the jury? That did not, in my or the district judge's estimation... That's not what I'm asking. I'm asking a hypothetical question. If somebody lifted, you know, pulled the arm, put the arms together, and just pulled her off the ground and held her in the air, did that get to the jury? There is, I mean, I'm... The devil is in the details. I do not mean, Your Honor, to trivialize the situation, but as this Court and the Supreme Court have consistently admonished parties in other courts, it's a very fact-intensive question. Right, and I'm asking you a particular set of facts. That particular set of facts, she gets handcuffed behind her back and the officer lifts her up and thereby injures her shoulders, is that an excessive force case that gets to the jury? It could be under the totality of the circumstances. Okay, so now we've got your case, and we're trying to figure out where, and we all agree, I think, or I would suggest, that if he merely gently handcuffed her hands behind her back, notwithstanding your opponent's contentions, there's no Fourth Amendment violation. So how are we supposed to figure out where in that continuum there's a triable case? It's a spectrum, and there are cases that say in the post-handcuffing context, contexts such as you've suggested, Your Honor, could arise to excessive force. That is not our case, of course. Well, but, you know, we've got... She gets both rotator cuffs ripped by your officer, at least for purposes of summary judgment, by your officer's conduct. So it seems like a fairly violent act. So why doesn't that one go to the jury? I'm just trying to figure out. We all concede that at some point it goes to the jury, and at some other point it doesn't. Tell me how we figure out where. I'll do my best, Your Honor. It's truly unfortunate if any injury did arise from the incident, and we're not here to suggest otherwise. However, the nature and the degree of the injury that was suffered is not determinative of the questions of either whether excessive force... No, but it's evidentiary of the amount of force applied, is it not? I mean, normally, handcuffing someone shouldn't result in tearing both their rotator cuffs. Now, it may be because she's an old lady. It may be because she was in a strange position, but it's at least some evidence of the amount of force applied, and she then testifies that he applied a large amount of force by lifting my arms up. Why aren't those two facts together enough to get to the jury? Well, I could skip to the second answer first, if I might. You can give me both of them. Even if we were to assume that a constitutional violation occurred, we have to deal with the issue of qualified immunity and whether a reasonably objective, knowledgeable officer would or should have known that that was excessive force. And that's where I was leading you, because I think there's sufficient evidence on the first part that excessive force may have been used. The question is whether a reasonably objective officer would have known that under the circumstances. That's the second part. I would not mind if this Court chose to... Well, we have a lot of cases that happen like that, where someone is handcuffed to the back, and, you know, the arms are lifted up. That isn't the first time something like this has occurred. Isn't that right? I mean, it goes on all the time, doesn't it? It's a commonly accepted, ordinary technique. Yeah, just to lift their arms up, and, you know, it's painful. It's painful when you do that. It would be painful, but the evidence of the case is neither contemporaneous with the handcuffing nor at any time during the several hours after the incident did the appellant complain of any injury or pain... Well, that can be a fact question. She dealt with it and then went to a doctor, and the doctor said, you've got two torn shoulder cuffs, whatever they're called. That's a fact in your favor, but if we take the facts into light most favorable to the other side... Exactly. I'm not sure why it matters that she didn't complain. I'm not sure it would have mattered had she complained. In other words, either force was used or it wasn't. So getting to the second step, why wouldn't a reasonable officer in this officer's circumstance have known that yanking the hands of an old lady too high in the air would hurt her? Don't say old lady. Say... You know, and she's not much... She's only 73. I know. She's not much older than I, but I'm taking the facts into light most favorable to your opponent. I'm not going to get into that part of the discussion, but in accordance with the expectations for the test that's been established, again, by this court and the Supreme Court, there's no robust consensus of cases establishing a bright line. In fact, Saussure recognizes there's that hazy border, I think, is the language, between acceptable and excessive force, which reinforces the need, again, to evaluate totality of circumstances and not focus microscopically in a slow-motion sort of way on the actual act of the handcuffing itself, but in the context of everything that's happening. I don't want to go much into the facts because I know the court has been familiar with the briefs, but this was a very high-risk situation. Officers had not been on the premises before, did not know who was present, did not know what was present by way of substances, weapons, firearms, or otherwise, or where they might be situated. All of this occurred... And I think no one doubts, at least I don't doubt, I can't speak for my colleagues, no one doubts the officer's right to restrain the plaintiff in this case. I think in this situation, restraining her while they search the place is perfectly okay. The question is whether they used too much force. They could just have her sit on the couch there and have the lady, the woman, law enforcement officer, you know, be by her and tell her you have to sit there, or they could have handcuffed her in front, you know, or even in the back. But it's a raising up of the shoulders. And this is the type of discussion that the Supreme Court has suggested that ought to be disfavored. You know, you want to know something. You want to know something, see? You could take a case like this, and you could probably try it in a day or a day and a half and have been over with, you know. But now they go on and on and on. And it's a... You know what I'm saying to you? You don't understand me? Well, the important... I mean, I just... All these immunities, they don't really save much time. They result in appeals and everything else. You know, I've been... I was a trial judge for whatever it was, 14, 15 years. We had a lot of these cases. They didn't take that long to try. Now they go on forever. It's not so much the matter... That's good for the law business, I suppose, you know, or defense counsel. Not so much the matter of time, Your Honor, but the fact that qualified immunity is the rule rather than an exception. And it's a right that ought to be properly applied to a case when the circumstances are appropriate. And one of the cases cited to you in the supplemental authorities was Blazek v. City of Iowa City. But the issue here is whether there was excessive force. Excessive force. And in that case, there was a remarkably similar alleged practice by the police officer that is, quote, grabbing plaintiff's arm, twisting it around plaintiff's back, jerking it up high to the shoulder, close quote. The court held was a relatively common and ordinarily accepted non-excessive way to detain an arrestee. And that no reasonable officer at the time of that instance would have known or believed otherwise. That is still the state of the law now. We're constantly expanding and contracting... Whose case is that? Blazek v. City of Iowa City. It was cited by letter, supplemental authorities, September 9th, 2014 to this court. Iowa? Iowa. That's out of the 8th Circuit, Your Honor. Out of the 8th Circuit. And I realize sometimes they do things a little differently there, but it is instructive. And what we cite also to a leading treatise on police misconduct cases written from the plaintiff's side itself acknowledges that there is no bright line dealing with the specific circumstances. How about my case? I believe that Hanson is meaningfully distinguishable. I'm sorry, Your Honor, I see I've exceeded my time. It's all right. It's meaningfully distinguishable from the case at hand. It was out in the open. There was not a search warrant involved. It didn't take place within the confines of a residence, nor was it under the circumstances of a potentially hazardous situation posing a risk of danger either to the officers or the occupants of the residence nor their destruction of evidence. As far as when they went in there, they didn't find anything. Actually, they had the wrong people. So they were called terrorists. Well, this incident was characterized... If you could bring one of those sniffing dogs there, they'd figure out what was going on. That's all you needed. My time is up. I'd love to stay and chat, but I know you have a busy calendar. Listen, I appreciate your candor. Thank you for your time. I highly respect you for it. All right. What are you going to do now? I just want to take up one more additional minute of your time. You look like a congressman when you get up there, you know. I wanted to respond to Judge Hurwitz specifically regarding the qualified immunity because that seems to be an issue for you. Well, sure. Let's assume excessive force. We still need to get to the second step, and I'm having trouble finding a case that we have this fiction that police officers read our cases and then follow them. But what's your best case? I'm looking at Palmer, and the problem with Palmer is it's too tight handcuffs, and that's different, I think, than the manner of applying them. So have you got a better case than Palmer? Well, I believe Palmer can be cited for the proposition that abusive handcuffing, in any form, is a court- Yeah, but the Supreme Court's been, and I think they're wrong, so let me preface it by that. But the Supreme Court has said you don't deal in generalities. You need a case that's got something close to the specific facts because you can't expect police officers to fill in the gaps between your cases. So is Palmer your best case? Is Hanson your best case? I think they're both our best cases. Okay. Is there any other best case that you've got? Well, Meredith certainly is also significant in this case because it held that the simple act of handcuffing during the execution of a search warrant, absent justifiable circumstances, is a Fourth Amendment violation. And in this case, there were no justifiable circumstances that would warrant taking a woman, again, not to repeat all the facts, you know them, but to rotate her arms in such a way that would cause two tears of rotator cuffs. And even though the injury of itself is not dispositive of this case, it certainly is one additional so-called gram factor that the court can consider in deciding whether there was excessive force. Ultimately, Your Honors, Mrs. Injan doesn't have to win at summary judgment. She just has to present a triable issue of fact. In this case, the jury should decide whether excessive force was applied or not. Thank you. Thank you. All right, matter submitted.
judges: Pregerson, Callahan, Hurwitz